Mr. Justice James
delivered the opinion of the Court:
In this case it appears that the plaintiff Halpine built a party wall, and afterwards sold the house and lot. After-wards the defendants built an adjoining house, making use of this party wall, and paid for such use the person who had bought the house that was first built. The plaintiff insists that by a proper construction of the building regulations, he was entitled to be paid for the wall when it should be used, although he had sold the house. He rests this claim on the *332 original building regulations proclaimed by President Washington, which are in the following words:
“ That the person or persons appointed by the Commissioners to superintend the buildings, may enter on the land of any person to set out the foundations and regulate the walls to be built between party and party, as to the breadth and thickness thereof, which foundation shall be laid equally upon the lands of the persons between whom such party walls are to be built, and shall be of the breadth and thickness determined by such person proper; and the first builder shall be reimbursed one moiety of the charge of such party wall, or so much thereof as the next builder shall have occasion to make use of, before such next builder shall any ways use or break the wall. The charge or value thereof to be set by the person or persons so appointed by the Commissioners.”
Afterwards the Commissioners made a regulation in these words:
“ The building owner shall pay for one-half of an existing party wall, or for so much thereof as he shall use, whether said wall be cut or not, and the quantity or measurement of wall ... so used shall be computed by the Inspector of Buildings, unless the parties in interest agree upon some other person or persons, for such purpose. The indemnity to the adjoining owner shall be paid by the building owner previous to cutting or in any manner using said wall at the then current price for similar work.”
It was insisted on the part of the plaintiff that this, change from the “first builder” to “the adjoining owner” was invalid.
As to that, I should say, first, that Congress authorized the Commissioners to make building regulations, which shall have the effect of law. That placed such regulations on an entirely different footing from general legislation of the Legislative Assembly. This court has held that the Legislative Assembly was a municipal body, and could not have authority to legislate except upon what are called municipal *333 subjects. That doctrine was applied to their attempt to subject equities of redemption to sale on execution. There Congress attempted to give authority to the Legislative Assembly, to legislate as of its own authority upon all subjects that were not forbidden by the acts of Congress or by the constitution. Here, Congress has said that the rules which should be made by the Commissioners shall have the effect of acts of Congress. They were declared to be in effect the action of Congress itself. They stand, therefore, on the footing of laws; and if the regulation as to paying the adjoining owner differs from the regulation made by President Washington, the alteration is valid.
We do notj however, think that it does differ therefrom. The language of the original regulation is entirely susceptible of a construction that by “first builder” was substantially meant the owner of the first building.
We have to go back to an early decision ini the old Circuit Court, to understand the operation of this building regulation made by President Washington. In tire case of Miller vs. Elliot, 5 Cranch C. C., 543, Cranch, C. J., said:
“ The original proprietors of the land now composing the city of Washington, by deeds dated about the 29th of June, 1791, conveyed their lands to Thomas Beall and John M. Gantt, in trust, among other things, to be laid out for a federal city, with such streets, squares, parcels and lots, as the President of the United States should approve; and that they should convey to the Commissioners of the city, for the use of -the United States forever, all streets, &c.; and that the residue of the lots should be equally divided between the United States and 'the original proprietors; and that the trustees should convey to the original proprietors the lots assigned to them in the division, and that the residue should be sold and conveyed to the respective purchasers. But such conveyances, as well to the original proprietors as to the respective purchasers, were to be ‘ on and subject to, such terms and conditions as shall be thought reasonable by the President for the time being, for regulating the mater *334 ials and manner of the buildings and improvements on the lots generally in the said city, or in particular streets, or parts thereof, for common convenience, safety and order; provided, such terms and conditions be declared before the sale of any of the said lots under the direction of the President.’
“ Under this provision of the trustees, the President of the United States, on the 17th of October, 1791, before the sale of any of the public lots, declared certain ‘terms and conditions ’ for regulating the materials 'and the manner of buildings and improvements on the lots in the city of Washington.
“ The fourth of these terms is: ‘ That the person or persons appointed by the Commissioners to superintend the buildings, may enter on the land of any person to set out the foundation’and regulate the walls to be built between party and party, as to the breadth and thickness thereof, which foundation shall be laid equally upon the lands of the persons between whom such party walls are to be built; and shall be of the breadth and thickness determined by such proper person; and the first builder shall be reimbursed one moiety of the charge of such party wall, or so much thereof as the next builder shall have occasion to make use of, before such next builder shall anyways use or break into the wall; the charge or value thereof to be set by the person or persons so appointed by the Commissioners.’ ”
Judge Cranch proceeded then to say:
“ It is, therefore, a condition annexed to the title of every house lot in the city of Washington, that when the proprietor builds a partition wall between himself and his neighbor, he shall lay the foundations equally upon the lands of both, and that any person who shall afterwards use the partition wall, or any part of it, shall reimburse to the first builder a moiety of the charge of such' paid as he shall use.”
He did not there distinctly say who. came within the description of the “ first builder,” but he seems to have intended that the right to build on an adjoining lot was an'easement.
*335 The question discussed here is whether it was contemplated that the wall so placed should belong to the party who built it, or was to belong at once to the two adjoining lot owners.
The theory insisted upon here is that it was not competent to rest a wall belonging to the first builder on another man’s land, and that therefore it must have been intended that the first builder simply had the right to build for the adjoining owner so much of the wall as should stand upon.the land of tire latter, and that from the very beginning the claim of the first builder was a claim for money expended in building the wall that partly belonged to another person.
I repeat, the contention is that it was from beginning only a claim for money. It was said, it is true, that this money was not due, and that no action to recover it could arise until the adjoining owner should make use of the wall that was built for him.
What would be the result of that construction? It would be a.money claim which ought to descend to the personal representatives. The administrator might administer on the estate, and close his account without collecting this debt; because it did not exist at that time. A quarter of a century might pass, and the administrator might have died. After a quarter of a century, some person would have to take out letters of administration on the estate of the first builder and bring this action. Meantime the first administrator should have reported the claim in some form as a possible asset. The impracticability of such a result shows that it could not have been intended to treat the building of a party wall as the building of a wall .belonging partly to another person, and as establishing thereby a mere money claim for so doing. It must have been intended that the first builder should have an easement to build his own wall on his neighbor’s land.
Nothing is said about the character of the easement; but the natural construction of the regulation is that the first builder was to rest his wall upon the party line.
As to the right to rest a wall belonging to A -upon the *336 land of B, there certainly could be no difficulty, if it was made a condition of the purchase itself. The regulation was to be published before the lots should be allotted or sold. They were published, and they became a condition of the purchase of those lots, and each of them was purchased subject to this very right. It was therefore entirely practicable that a lot should be bought, subject to the right of the adjoining owner to rest his wall upon it.
We think that the machinery for carrying out the kind of a claim made here by the plaintiff would be impracticable, and that the inconvenience, and, I might say, with entire respect, the absurdity of the working of it, indicates that such was not the intention. The natural construction of this provision is that it was simply an easement belonging to the first builder, that he should rest his wall upon the land of his adjoining neighbor. The principle was that when the adjoining neighbor 'should come to avail himself of that wall," he, of course, should pay for it, and the rule provided by the regulation was that 'he should do so then, and not before.
We have considered this question in different lights in two cases, when we held that this was the proper construction of the privilege given to rest a wall partly on,an adjoining lot.
It was said in argument that these decisions were only dicta. We have to say that even if they were, it was intended thereby to settle the law. They were very deliberately uttered. We thought we had settled once for all, for future cases in this court, the doctrine that a wall belonged to the person who built it. The consequence of that doctrine would be that when a lot with a house on it was sold, the wall was sold to the purchaser. Then when the adjoining building should be erected, and that wall should be used, it would be the wall of the purchaser that was used, and the liability to compensate for the use of it would be to the purchaser. The first builder who expended the money on the wall would, in the meantime, have been paid for precisely the very thing *337 that he now seeks to recover from the man who uses this wall. In selling the house, he was paid for the whole of the house. He has transferred the very thing for the use of which he' now claims compensation.
We have reviewed carefully the grounds of our former decisions, and adhere to them, and we now hold that the payment which has been made to the present owner of the house first built, was made according to the intention of the building regulations and according to the terms on which these lots were bought.

Judgment affirmed.